No. 13,382.

WILLIS CURL vs. J. L. BOND, SHERIFF, ET ALS.

SYLLABUS.

Proof that an agent in possession and use of the property of his principal, has held himself out to the public as the owner of same in such manner as to induce credit to be given him, can not prevail against the true owner, who is not shown to have either superinduced the agent's course of conduct, or to have clearly and unequivocally acquiesced therein.

APPEAL from the Third Judicial District, Parish of Lincoln.—
Barksdale, J.

*Holbert & Barret* for Plaintiff, Appellant.

*J. B. Halstead* for C. P. Cooper, Defendant, Appellee.

The opinion of the court was delivered by

WATKINS, J. This is a proceeding by third opposition in which the plaintiff claims the ownership of certain property in the hands of the defendant, sheriff, and resists the seizure and sale thereof—same hav-

ing been seized under an execution which issued under a judgment in the suit entitled C. P. Cooper vs. S. A. Cameron in the Parish of Lincoln, and as the property of the defendant therein.

To this opposition, the sheriff who held the writ under which the property was seized, and, also, the plaintiff and defendant in execution, were made parties.

Cameron having made a conveyance to one Andom, of the Parish of Caddo, of an undivided half interest, or share in the property, and he, in turn, having made a conveyance of same interest to the Merchants and Farmers Bank of Shreveport, of same parish, as a collateral security for his (Andom's) account, both Andom and the bank were made parties defendant, also.

Cooper, originally, had the whole of the property seized; but subsequently restricted his seizure to that undivided half interest which was not embraced in Cameron's sale to Andom, and in Andom's conveyance to the bank.

To these proceedings, the bank took exception, on the ground that the court of Lincoln Parish had not, and should not exercise jurisdiction over it, *ratione materiae,* it being confessedly domiciled in the Parish of Caddo.

The judge *a quo,* entertaining the opinion that the property seized was an immovable by destination, overruled the exception, and entertained jurisdiction of the case.

Subsequently, defendant, Cooper, requested a severance of trial, ,and same having been accorded to him, the case went to trial before the district judge, and it resulted in a judgment of non-suit in respect to the plaintiff's demand to be decreed the owner of the undivided half interest in the cotton compresses, together with the engine, boilers, belting, shafting and machinery, thereto attached, which were seized, and in all other respects in a final judgment, rejecting his demands *in toto.*

It is from that judgment that the plaintiff prosecuted the present appeal—the bank not being a participant in the trial its rights in the premises were not passed upon by the judge, and its counsel has filed no brief in this court.

The defendant and appellee, Cooper, has filed an answer to the appeal, and requested an amendment of the decree appealed from, so as to entirely reject and disallow the demands of the plaintiff and appellant.

The judgment rendered in favor of Cooper against Cameron, under which execution issued, is for a small sum, and founded on a note of Cameron which he acquired from a third person as his debtor, and for whose account he holds the same as a collateral security.

An attentive examination and study of the record and the argument of counsel, has given us the impression that the defendants do not seriously question the reality and validity of the plaintiff's title to the compress, and its fixtures and appurtenances; but that, on the other hand, their contention is, that conceding *arguendo* the plaintiff's ownership, he has permitted the defendant, Cameron, to exercise rights of ownership over the property, and to hold himself out to the public as owner in such manner, as to give him credit upon the faith of same, and that he is equitably barred and estopped from asserting his (Curl's) ownership to their prejudice—and particularly with reference to Cooper as a judgment and seizing creditor.

The claim of the plaintiff as stated in his petition is, that he is a resident of Sumter County, State of Alabama, and is the lawful owner of a certain cotton compress, now situated in the city of Ruston, Lincoln Parish, Louisiana, consisting of engines, boilers, compress, and all machinery and improvements attached thereto, composing and constituting the said cotton compress. That he acquired all of said property, except the cotton shed, warehouse, building, etc., at a foreclosure sale and proceeding against the York·Manufacturing and Compress Company, as will more fully appear by a sheriff's deed of said property of date — day, 1896.

The petition further states that he is the owner of the warehouse, cotton shed, cotton platform, and all of the buildings and improvements belonging to or pertaining to said compress; and that he acquired the said warehouse, cotton platform, etc., by virtue of having paid for all of said improvements out of the earnings of his said press, during the season of 1897 and 1898.

Further, that he is the owner of, and acquired in the same way, a certain contract of lease transferred by E. Whiteman to S. A. Cameron in block "Q" in the town of Ruston, Louisiana, together with the improvements thereon, according to the map and survey of said town on which the said compress property now stands, as shown by the conveyance records of the said parish.

The petition then relates the circumstances of the property having been seized under an execution which issued in the case of C. P.

Cooper vs. S. A. Cameron—as has been heretofore detailed.

The petition then alleges that S. A. Cameron has no interest whatever in the property seized, and that same can not be sold to pay his debts.

It further alleges, that he is unable to give an injunction bond to stop the sale of his property, and that he has, through an attorney, made affidavit, that he was and is the *bona fide* owner of said property; and in said affidavit fully set forth the facts on which his title and ownership to said property is based, and that he, subsequently, called the attention of the sheriff to said affidavit, and filed the same among the archives of the Parish of Lincoln.

The petition further alleges, that he has recently, and within the last month, prior to the filing of the petition, "learned that the said S. A. Cameron had pretended to sell a half interest in petitioner's property, to-wit: The said compress, buildings and appurtenances thereto, and hereinbefore described, to one E. S. Andom, a resident of Shreveport, for the stipulated price of $12,500, as is shown by a deed to that effect recorded in the conveyance records of Lincoln Parish; and that the said Andom a day or so after his said purchase from Cameron, made a pretended sale of the same property to the Merchants and Farmers Bank of Shreveport," for a like price of $12,500, "as is shown by a deed to that effect, duly recorded in conveyance records of Lincoln Parish."

It further represents, that the said Cameron had no right or authority to sell petitioner's property, the property herein described. That the pretended sale to Andom did not vest ownership in him, and gave him no title whatever to the said property; and the said Andom having no title to the said property, could not convey any title to the said bank.

That the said sale by Cameron to Andom, and like sale by Andom to the bank, are absolute nullities, and convey no title whatever, as far as petitioner in concerned.

Your petitioner avers, that said Andom has not paid anything at all on the said property, and neither has the bank paid anything to said Andom for the said property.

That the recitals in both of said deeds, above referred to, to the effect that the $12,500 was paid, and the receipt of which is acknowledged, is erroneous, false and untrue, and fraudulent, and said recitals do not conform to the true facts.

That the said Andom did not pay a dollar of the said pretended price, but gave his notes to the said Cameron, one for six thousand dollars, payable in twelve months from date, and one for fiifteen hundred dollars, payable ——— day after date, which notes are still unpaid, and at this time, in the possession of the said Cameron; and that the said bank knew at the time of the existence of said notes when they pretended to buy said property from Andom; and that the said bank did not pay the said Andom at the date of the said pretended sale from Andom to the bank, a dollar in money or otherwise.

That "the bank simply holds the said property as collateral for Andom's debts to said bank, and it was not (?) the intention of the said bank to pay Andom for the said property."

The prayer of the petition conforms to the foregoing averments; and appropriate relief is demanded.

An examination of the record discloses that the plaintiff did become the purchaser of the cotton compress and its appurtenances, at a judicial sale made in the State of Alabama, in regular foreclosure proceedings therein; and that his title was duly executed and recorded, conformably to the Alabama law.

That, thereby, Curl became the absolute owner of the property at the foreclosure sale.

The proof shows that the cotton compress and appurtenances which were purchased by the plaintiff, were removed from York Station, Alabama, to Ruston, Louisiana, in the latter part of the summer of 1897.

The testimony shows that the plaintiff is a resident of York Station, Alabama, and had the cotton compresses and appurtenances in his possession as owner at that place.

That Cameron is his son-in-law, and had visited Ruston, Louisiana, and ascertained that a cotton compress was much needed there; it being a place where a large quantity of cotton was bought and sold.

That regarding it as a favorable location for the compress, he prevailed on the plaintiff to have it removed to Ruston, Louisiana, and that the people of Ruston would advance twenty-five hundred dollars to pay for the removal and erection of the said press at Ruston, Louisiana, for operation; and that they would pay the plaintiff five hundred dollars out of the advances to be thus made, if he would agree for his press to be moved to that point, and would agree that the

property be pledged to the people of Ruston for the twenty-five hundred dollars to be thus advanced.

The evidence shows further that communications were carried on between the plaintiff and citizens of Ruston; and that the latter agreed to advance the money required and take a pledge of the property as security; and that said advances were to be paid back out of the net earnings of the compress, and when said earnings were paid, the property was to be restored to the plaintiff.

The evidence further shows that in pursuance of this understanding, a document was executed, of the following tenor:

"This is to certify, that I hereby give S. A. Cameron the right to " pledge my compress to the citizens of Ruston, Louisiana, for twenty- " five hundred (2,500) dollars, to defray the expenses of moving said " press from York, Alabama, to Ruston, Louisiana, with the under- " standing I am to receive five hundred ($500) dollars of this pledge " money for an advance of the earnings of my press. They are to " take good care of the property and turn it over to me free from " any debt.

"This August 5th, 1897.

"Witness:

"LEILA CAMERON.

"WILLIS CURL,

"S. A. CAMERON."

The evidence shows that the compress was, accordingly, removed from York, Alabama, to Ruston, Louisiana, and was there erected for operation by the citizens of Ruston.

The purport of the statements of both the plaintiff and Cameron is, that the removal of the press from Alabama, and its subsequent establishment in Rouston, Louisiana, were in pursuance of the foregoing written document; and that Cameron as the agent of the plaintiff, superintended the removal of the press, its subsequent establishment at Ruston, and its subsequent operations—it being operated while under a pledge to the Ruston bank, in the name of the Ruston Compress Company. Both the plaintiff and Cameron agree that the latter had no authority, except as conveyed to him in that document, to pledge the press.

It appears from the record that subsequent to the establishment of the press at Ruston, Louisiana, Cameron gave the press in pledge to

the Ruston Bank, to secure a pledged note of twenty-five hundred dollars; and their contention is, that the pledge was made in pursuance of the foregoing written order.

The testimony, in our opinion, very clearly shows, that the plaintiff knew nothing of Cameron having conveyed a half interest in the property to Andom, or of Andom's conveyance to the bank.

The truth of the matter is, that plaintiff was notified by Cameron of Cooper's seizure, and that he immediately took steps to recover the half interest in the property sold, and to resist Cooper's seizure of the remaining half.

There is testimony in the record to the effect, that many people in Ruston had understood and believed that Cameron was owner of the press and of the property, judging from appearances and from the actions and conduct of Cameron; but at the same time there is no substantial proof in the record which satisfies our minds that the plaintiff was aware of Cameron having so acted and treated the property as his own, so as to conclude the plaintiff from the present assertion of his legal rights. It is certain that the plaintiff did not, himself, so act as to influence the public to give Cameron credit upon the faith of his alleged or assumed ownership of the property; and to defeat his rights, he must have so acted, as to have influenced the public to so believe.

From the evidence it appears that Cooper was never a creditor of Cameron; and that there were no financial dealings between them. It also appears, that Cameron having become indebted to a third person for the purchase price of property he had bought on time, and for which he gave his notes payable at a future date, one of those was assigned to Cooper as collateral security, only; and upon this he brought suit against Cameron at maturity.

On this state of facts, it is perfectly clear, that there were no such equities in favor of Cooper as against Cameron and Curl, as defendant's counsel contend for; for, if Cooper did act on the belief that Cameron was owner of the compress, it influenced him only to voluntarily acquire his paper from a third person, and without the knowledge of Cameron.

The district judge, in the course of his written opinion, in which he assigned the reasons for his judgment, makes this statement:

"Curl and Cameron both swear most positively, that the former has not sold the property to the latter. It is as certain as can be that

Cameron brought the property from York Station to (Ruston) with the consent of Curl.

"It is equally as plain to me that this was done under some kind of an agreement between Curl and Cameron, or between Curl and Mrs. Cameron, who is Curl's daughter.

\*         \*         \*         \*         \*         \*

"Cameron publicly held out the property as his, and operated the business in his own name. The record shows no enquiry on plaintiff's part as to how the business called by him to be his own was prospering, or as to whether or not the advance is being paid—the advance for which he alleges his property to have been pledged. It does not appear that Cameron made any report of his gestion of Mr. Curl's affairs—his compress business—until the fall of 1898, at least one year after the business began, and after he had sold one-half interest to Andom."

After reciting much of the evidence, the judge concludes his opinion with the statement that the "plaintiff's evidence, or rather the evidence in this case, fails to satisfy me that plaintiff owns the compress and machinery claimed to have been brought from Alabama by Cameron."

But then, he takes the precaution to observe that "as some of my conclusions may be wrong as to plaintiff's title to this property, as to his knowledge of Cameron's running the property in his name, I shall only non-suit this part of the demand; i. e., as to the property claimed to have been bought at the foreclosure sale in Alabama."

He thereupon dismisses that claim as of non-suit.

Our examination of the record has led us to a different conclusion as to this part of the case. The original deed to the property is in evidence, as well as the laws of Alabama appertaining thereto; and they show clearly that the plaintiff acquired an apparently valid and legal title to the property.

The written agreement between the plaintiff and Cameron, relative to the removal of the compress from York, Alabama, to Ruston, Louisiana, is also in evidence; and same is affirmed by the concurrent testimony of the two.

There is in the record no testimony either written or oral, to the effect that Cameron ever acquired any interest in the property. Cameron's ownership is denied emphatically by both the plaintiff and Cameron. This statement on Cameron's part, is, of course, incon-

sistent with his having conveyed an interest in the property to Andom; but it is not inconsistent with the plaintiff's deed, and other testimony in support of it.

An examination and careful study of the whole case, has led us to the conclusion that the plaintiff acquired the title to the property at judicial sale in Alabama; and that he has not parted with the title thereto at any time since, or to any one; and that he is entitled to a decree recognizing his ownership.

As we have already stated, the claim made on behalf of Cooper, that he and the public had been deceived and induced to extend credit to Cameron on the faith of his alleged, ownership, can not be allowed to prevail against the true owner, who is not shown to have superinduced Cameron's alleged course of conduct. On the other branch of the case, in reference to the lease of the buildings which are constructed upon the leased property, we are not prepared to differ from our brother of the District Court, but are satisfied to affirm his judgment in that particular.

It is, therefore, ordered and decreed that the judgment appealed from be annulled and reversed in so far as it decrees a non-suit as to plaintiff's claim of ownership of the cotton press, fixtures and appurtenances; and it is further ordered that the plaintiff be adjudged the owner of the cotton compress, fixtures and appurtenances thereto attached and belonging; and that the seizure thereof by the defendant, Cooper, be decreed illegal and void.

It is further ordered and decreed that the judgment appealed from be, in all other respects affirmed; and that the cost of appeal be taxed against the defendants and appellees.

Rehearing refused.

BLANCHARD, J., recused.